# Hughes v. Commonwealth.

May 25, 1948.

Rehearing denied October 22, 1948.

Joe Hobson for appellant.

A. E. Funk, Attorney General, and Armand R. Angelucci, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellant was indicted at the January term of the Floyd Circuit Court charged with the offense of carrying concealed a deadly weapon. Upon trial of the case the jury fixed his punishment at 2 years in the penitentiary. From the judgment of the court based upon that verdict, he prosecutes this appeal.

## Grounds for Appeal

In his brief appellant relies upon the following grounds for reversal of the judgment: (1) The court erred in overruling appellant's demurrer to the indictment; (2) the court erred in admitting, over the objection and exception of the appellant, incompetent evidence; (3) the court erred in overruling appellant's motion to set aside the swearing of the jury and to continue the case; (4) the court erred in permitting the commonwealth's attorney to make improper remarks to the jury in his opening statement; (5) instruction No. 1 was erroneous. These objections will be taken up in the order in which they are stated. Nos. 2 and 3 will be considered together because they arise out of the same testimony heard at the trial.

## The Indictment

Omitting the formal and accusatory part of the indictment, the descriptive part, involved herein, reads as follows:

"The said Jake Hughes in the said county of Floyd on the 6th day of January A. D. 1947, and within 12 months before the finding of this indictment, unlawfully, willfully, and knowingly did carry concealed upon and about his person a pistol, a deadly weapon other than an ordinary pocket knife, contrary to the form of the statute in cases made and provided and against the peace and dignity of the Commonwealth of Kentucky."

Appellant contends that this indictment is defective

because he is charged with the commission of this offense at any time between January 6, 1946, and January 6, 1947, and that prior to June 19, 1946, the punishment for violation of KRS 435.230 was a fine of not more than $100 and imprisonment for not less than 10 nor more than 40 days and was, therefore, only a misdemeanor; that the 1946 legislature amended this statute so as to make it a felony punishable by confinement in the penitentiary for not less than two nor more than five years but that the amendment did not become effective until June 19, 1946, Acts 1946, c. 40; that as the statute did not become effective until that date, in order to charge a violation of that statute, it was incumbent upon the Commonwealth to aver in the indictment that the offense was committed after the effective date of the statute, to-wit, June 19, 1946; that the averment in the indictment that the offense was committed within 12 months before the finding of the indictment falls short of alleging that it was committed after the effective date of the act.

In support of his position he cites and relies on Commonwealth v. Aultmire, Ky., 58 S. W. 369 (not reported in State Reports) and Commonwealth v. Louisville Taxicab & Transfer Co., 210 Ky. 324, 275 S. W. 795. In the first of these cases it was held that an indictment found May 24, 1900, which charged the violation "within 12 months last past" of a law which did not become operative until June 5, 1899, was not good. The indictment in that case did not name any date on which the violation was committed. This court held in that case that it charged defendant with committing an act at a possible time when it was not unlawful to commit it, i. e., between May 24, 1899, which was one year before the finding of the indictment, and June 5, 1899, when the act prohibiting the crime became effective. In the second case above referred to the indictment was returned on December 19, 1924, and charged that the offense was committed on the ——— day of June 1924, and within 12 months next before the finding of the indictment. The law violated did not take effect until June 17, 1924, Acts 1924, c. 81, hence the indictment did not charge the act was committed after the law took effect and it was therefore held that the indictment was demurrable.

The thing that distinguishes these two cases from the case at bar is that neither of these two cases involved a crime which was a public offense before the effective date of the act which made them such. In the Aultmire case the crime on which the indictment was based was violation of the local option law in the town of Hartford and there was no such public offense prior to June 5, 1899, when the local option law became effective in that town. In the Louisville Taxicab case, that company was indicted for failure to secure a certificate from the state highway commission and pay certain fees therefor. The act requiring this to be done did not become effective until June 17, 1924, and previous to that time it was not a public offense. In the case at bar the act of carrying concealed a deadly weapon was a public offense before June 19, 1946, and was a public offense on January 6, 1946, a year before the finding of the indictment and for many years previous thereto. The legislature of 1946 changed the penalty and made the offense a felony instead of a misdemeanor. No other change was made in the statute. Since the indictment was for a public offense which existed both before and after June 19, 1946, it is not defective because it failed to state that the offense was committed after June 19, 1946, when the penalty for violating the public offense was changed. Of course, if the proof had shown that the offense was committed before June 19, 1946, he could have been subjected only to the penalty in effect at that time. As was said in the case of Acree & Kinman v. Commonwealth, 13 Bush 353:

"As therefore the sale by a distiller at his residence, when the indictment in this case was found, was unlawful, he cannot escape by reason of a change of the law after the commission of the offense, but is only entitled to the benefit of any mitigated punishment enacted by the new law at his own election."

In the case at bar, the proof having shown that the offense was committed in October or November of 1946, he can be subjected to the greater penalty in effect at that time. We think it was only necessary that the indictment aver, as it did, that the offense was committed on the 6th day of January 1947, and within 12 months before the finding of this indictment and that

it was not further necessary to aver that it was committed after June 19, 1946.

### Incompetent Evidence

### Motion for Mistrial

Gordon Duncan, 12 years old, one of the Commonwealth's witnesses, was asked by the county attorney what Jake Hughes, appellant, was doing with the pistol he saw him have. In reply to that question he answered: "He had it in his coat pocket and Mamma and Jake came there and tried to raise a racket and Jake pulled that gun out there; pulled it out of his coat pocket; and when he pulled it out, he wrenched it like that (demonstrates to the jury) and said: 'I am the meanest G—— D—— son of a bitch in the world.'" Appellant's attorney objected to the last sentence in that answer about being the meanest man in the world and moved to set aside the swearing of the jury and continue the case. The court admonished the jury not to consider the objectionable part of the testimony referred to and overruled appellant's motion to set aside the swearing of the jury on that account. The Commonwealth probably did not anticipate this part of the testimony from a 12 year old boy and in view of the admonition given the jury by the court, we do not regard it as prejudicial to appellant. For the same reason we do not think the court erred in refusing to declare a mistrial. We do not believe these words thrown in incidentally as part of the answer of the young witness would prejudice the jury in its decision, especially in view of the admonition given by the court.

Millie Gibson, a witness for appellant who was with him when the gun was taken from him, was asked on cross-examination if she was drunk or sober that night, to which she answered that she was drinking but was not drunk. Appellant claims that since he was not being tried for being drunk but for carrying a concealed weapon, this was prejudicial to him. Since the question was as to the condition of a witness and not appellant's condition, we do not see how it could prejudice him. It was no doubt asked her to determine her credibility as a witness and was competent and relevant as affecting the weight of her testimony and the reliability of her observations on that occasion. This witness was

also asked several questions on cross examination which appellant claims were asked in order to establish that this witness and appellant stayed together at the same house that evening and that this evidence was introduced in an effort to get to the jury the inference of the Commonwealth that they were living together but were not married and that its purpose was to prejudice the jury against appellant. After she had testified that she stopped in at Ed Hicks' to get out of the rain, these questions were asked her:

"Q. 14. Did Jake Hughes stay there at Ed Hicks' that night? A. He was over there but he didn't stay there."

"Q. 15. While you were there? A. Yes, he was."

"Q. 17. Did he sit there in that man's house with that pistol all the time he was there? A. He didn't go in the house."

We do not place the construction on this testimony which appellant seeks to put on it. Appellant on direct examination had testified that when arrested he was going from his son's home, where he had taken the pistol from his son, to his own home, a distance of about a mile; that he was carrying the pistol in his hand, not concealed in his coat. The testimony of the Gibson woman, referred to above as being prejudicial, was apparently introduced to contradict his testimony on direct examination rather than for the purpose for which appellant claims it was introduced. At any rate, we do not think it was prejudicial to appellant as claimed by him.

### Improper Remarks of County Attorney

In his opening statement to the jury the county attorney, Mr. Burchett, made this statement: "The defendant, Jake Hughes, was drunk and creating a disturbance, and some of his neighbors sent for the officers to come down there." Appellant claims this statement by the county attorney was highly improper and that the trial court erred in overruling appellant's objection thereto. The basis of his objection was that appellant was being tried for carrying concealed a deadly weapon and not for being drunk and that this statement was prejudicial. We do not think the statement was prejudicial.

The jury knew the offense for which appellant was being tried and we do not think a reference to his being drunk would mislead them. The statement was merely an introduction by the county attorney to show what led up to the arrest and the reason and occasion for Officer Castle's being called to the place where the disturbance existed which caused appellant's arrest, the resulting search and the finding of the concealed weapon on his person.

## The Instruction

Instruction No. 1 given by the court reads. as follows:

"If the jury believes from the evidence, beyond a reasonable doubt, that in Floyd County, Kentucky, and before the finding of the indictment, the defendant, Jake Hughes, unlawfully and feloniously carried concealed, upon his person, a pistol, a deadly weapon, other than an ordinary pocket knife, you will find him guilty as charged and fix his punishment at imprisonment in the state reformatory for not less than two nor more than five years, in your reasonable discretion."

Appellant contends that this instruction is erroneous because the trial judge failed to charge the jury that appellant could not be convicted on the felony charge unless it had been established that the alleged offense was committed after June 19, 1946. He contends that under this instruction appellant could have been convicted of the felony charge regardless of the time when the alleged offense was committed for the jury was only required to find that this purported offense was committed before the finding of the indictment. In support of this contention he makes the same argument and cites the same cases that were relied on in his attack on the indictment. For the same reasons we gave for upholding the indictment we now hold this instruction was not prejudicial. Furthermore the indictment charged that the act was committed on January 6, 1947, and the proof showed it was committed in October or November 1946, and there was no conflict in the evidence as to when the act was committed. It was, therefore, unnecessary to submit to the jury in the instruction the question of whether or not it was committed before or after June

19, 1946. Even if instruction No. 1 was technically erroneous, it was not prejudicial.

### Conclusion

After a careful examination of all the record in the case, we find no errors prejudicial to the substantial rights of appellant and for this reason the judgment of the lower court must be and it is hereby affirmed.

Judgment affirmed.